# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

| | | |
|---|---|---|
| MICHELLE HICKS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 15-CV-3249-S-DGK-SSA |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER AFFIRMING THE COMMISSIONER'S DECISION

Plaintiff Michelle Hicks petitions for review of an adverse decision by Defendant, the Acting Commissioner of Social Security ("Commissioner"). Plaintiff applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401–434, and for supplemental security income under Title XVI of the Act, 42 U.S.C. §§ 1381–1383f. The administrative law judge ("ALJ") found Plaintiff had multiple severe impairments but retained the residual functional capacity ("RFC") to perform work as a general assembler, final assembler, or table worker. The ALJ thus found her not disabled.

As explained below, the Court finds the ALJ's opinion is supported by substantial evidence on the record as a whole. The Commissioner's decision is therefore AFFIRMED.

**Procedural and Factual Background**

The complete facts and arguments are presented in the parties' briefs and are repeated here only to the extent necessary.

Plaintiff filed the pending applications on April 17, 2012, alleging a disability onset date of December 5, 2011. The Commissioner denied her applications at the initial claim level. The ALJ heard her case but issued an unfavorable decision. The Appeals Council denied Plaintiff's

request for review, leaving the ALJ's decision as the Commissioner's final decision. Plaintiff has exhausted all administrative remedies and judicial review is now appropriate under 42 U.S.C. §§ 405(g), 1383(c)(3).

## Standard of Review

A federal court's review of the Commissioner's decision to deny disability benefits is limited to determining whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Nowling v. Colvin*, 813 F.3d 1110, 1119 (8th Cir. 2016). Substantial evidence is less than a preponderance, but enough evidence that a reasonable mind would find it sufficient to support the Commissioner's decision. *Id.* In making this assessment, the court considers evidence that detracts from the Commissioner's decision, as well as evidence that supports it. *Id.* The court must "defer heavily" to the Commissioner's findings and conclusions. *Wright v. Colvin*, 789 F.3d 847, 852 (8th Cir. 2015). The court may reverse the Commissioner's decision only if it falls outside of the available zone of choice; a decision is not outside this zone simply because the evidence also points to an alternate outcome. *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011).

## Discussion

The Commissioner follows a five-step sequential evaluation process to determine whether a claimant is disabled, that is, unable to engage in any substantial gainful activity by reason of a medically determinable impairment that has lasted or can be expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A). This five-step process considers whether: "(1) the claimant was employed; (2) he was severely impaired; (3) his impairment was, or was comparable to, a listed impairment; (4) he could perform past relevant

work; and if not, (5) if he could perform any other kind of work." *Chaney v. Colvin*, 812 F.3d 672, 676 (8th Cir. 2016).

At Step Four, the ALJ assessed an intricate RFC for Plaintiff:

> [She can] perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except: She requires a sit-stand option with the ability to change positions every 30 minutes. She must avoid concentrated exposure to dusts, odors, gases, and fumes. She must avoid noisy work environments. She can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. She can occasionally push and pull with the upper extremities. She must avoid overhead reaching. She could have occasional contact with supervisors, coworkers, and the general public.

R. at 29.[1] Plaintiff argues that the ALJ erred by: (1) discounting the opinion of the treating nurse practitioner, Gloria Canaley ("Nurse Canaley"); (2) failing to provide a "narrative bridge" between the record evidence and Plaintiff's supposed RFC; and (3) improperly finding her subjective complaints incredible. These arguments are without merit.

**I. The ALJ was free to reject Nurse Canaley's opinions in favor of the five doctors' contrary opinions.**

Plaintiff argues that substantial evidence in the record as a whole does not support the ALJ's decision because, in assessing her RFC at Step Four, the ALJ did not appropriately consider the medical opinions of Nurse Canaley. Nurse Canaley treated Plaintiff several times, although not every visit considered Plaintiff's ability to sit, stand, or walk. R. at 413–27, 665–88, 690–99. In January 2014, she completed a checklist expressing her opinion that Plaintiff could not sit, stand, or walk in combination for a full eight-hour workday due to her impairments. R. at 702. She opined that Plaintiff had wholly disabling postural limitations. R.

---

[1] The Commissioner defines "sedentary work" as:

> [W]ork involv[ing] lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. §§ 404.1567(a), 416.967(a).

at 702. Nurse Canaley completed paperwork for Plaintiff to receive a disabled parking placard in which she stated that Plaintiff could not walk for fifty feet without an assistive device. R. at 706. The ALJ gave these opinions little weight and found Plaintiff's RFC to be less limiting.

The ALJ assesses a claimant's RFC by weighing all of the relevant medical evidence. *Lacroix v. Barnhart*, 465 F.3d 881, 887 (8th Cir. 2006). Generally, the medical opinions of "acceptable medical sources" on a claimant's impairments are given more weight than so-called "other medical sources." *Id.* at 885. Nurse practitioners are "other medical sources" and thus merit less weight than acceptable medical sources. *Id.* at 886. "In determining what weight to give 'other medical evidence,' the ALJ has more discretion and is permitted to consider any inconsistencies found within the record." *Raney v. Barnhart*, 396 F.3d 1007, 1010 (8th Cir. 2005). Whatever weight the ALJ decides to give a source's opinion, she must "always give good reasons." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

Because Nurse Canaley is a nurse practitioner, the ALJ had considerable discretion to reject her physical medical source statement. *See Lacroix*, 465 F.3d at 885. She had a good reason to do so: Nurse Canaley's opinions were inconsistent with the opinions of several other doctors, all of who were, unlike Nurse Canaley, "acceptable medical sources."

There were five such doctors. C.A. Gotway, M.D., opined that Plaintiff could sit, stand, or walk for about six hours in an eight-hour workday, and had minimal postural limitations. R. at 95, 104. Julio Pardo, M.D., had the same opinion. R. at 115–16, 125–26. Adrian D. Feinerman, M.D. ("Dr. Feinerman"), observed during a consultative examination that Plaintiff could walk fifty feet, did not need an assistive device to walk, and had no difficulty arising from a chair. R. at 518–19. Franklin Hayward, II, D.O., wrote that Plaintiff ambulates well. R. at 540. Jeffrey Ripperda, M.D. ("Dr. Ripperda"), recommended that Plaintiff remain active and

4

return to work, which implies that her impairments do not render disabling exertional limitations, contrary to Nurse Canaley's opinions. R. at 321; *see Myers v. Colvin*, 721 F.3d 521, 527 (8th Cir. 2013) ("In the absence of other evidence in the record, a physician's unrestricted recommendations to increase physical exercise are inconsistent with a claim of physical limitations."). These medical professionals did not treat Plaintiff as long as Nurse Canaley, but the ALJ fairly relied on the fact that all of them arrived at the same, contrary conclusion. *See Raney*, 396 F.3d at 1010; *cf. Nowling*, 813 F.3d at 1123–24 (finding that the ALJ should have given greater weight to an "other medical source" that treated the claimant thirty-eight times, but whose opinions were consistent with an acceptable medical source's).

Although Plaintiff views the medical evidence differently, "[i]t is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians." *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001). The ALJ had sufficient reason to credit the acceptable medical sources' opinions over Nurse Canaley's.

## II. The ALJ was not required to build a narrative bridge of the sort described by Plaintiff.

Plaintiff argues that the ALJ's RFC formulation is erroneous because the ALJ failed to provide a "narrative bridge" linking the RFC to specific medical records. Because the ALJ is not required "to follow each RFC limitation with a list of specific evidence on which the ALJ relied," the Court rejects Plaintiff's argument. *Hilgart v. Colvin*, No. 6:12-0322-DGK, 2013 WL 2250877, at *4 (W.D. Mo. May 22, 2013). As for Plaintiff's complaint that the ALJ assessed some restrictions unsupported by the record, any such error works in her favor and so is harmless. *See Wright*, 789 F.3d at 853 (excusing a harmless error). The ALJ's RFC formulation reflects careful consideration of all evidence related to Plaintiff's credible limitations, and the Court finds no error in its construction.

5

**III. Plaintiff's lack of corroborating objective evidence, spotty work history, exaggeration of symptoms, recommendations to merely stay active, and daily activities all support the ALJ's decision to find her incredible.**

The ALJ rejected Plaintiff's complaints to the extent they conflicted with the RFC the ALJ found. R. at 33. Plaintiff argues this was error, specifically taking issue with her claims that she could not sit, stand, or walk for long periods of time.

"Assessing and resolving credibility is a matter properly within the purview of the ALJ." *Chaney*, 812 F.3d at 676. In making this determination, the ALJ must take into account all record evidence, including the medical evidence. *Wright*, 789 F.3d at 853. "If the ALJ discredits a claimant's credibility and gives a good reason for doing so, [the court must] defer to [her] judgment even if every factor is not discussed in depth." *Milam v. Colvin*, 794 F.3d 978, 984 (8th Cir. 2015).

Here, the ALJ offered ample reasons for discounting Plaintiff's credibility. First and most importantly, as explained above, the ALJ properly found that the medical evidence contradicts Plaintiff's claims of sitting, standing, and walking limitations. *See Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009) (requiring the ALJ to consider "the absence of objective medical evidence to support the claimant's complaint").

Second, Plaintiff's earnings reports documented an inconsistent employment history, which can undermine credibility. R. at 227; *see Wright*, 789 F.3d at 854 (perceiving questionable work motivation in a claimant who had a sporadic work history over the past twenty-six years).

Third, several doctors found that Plaintiff was exaggerating her symptoms. For example, Dr. Ripperda wrote, "I stopped her review of systems about half way th[r]ough as [Plaintiff] reported having every single symptom that I asked about so I believe it to be unreliable. She gave vague descriptors of every symptom asked." R. at 319. This was grounds for the ALJ to

discount her credibility. *See Grable v. Colvin*, 770 F.3d 1196, 1202 (8th Cir. 2014) (affirming the ALJ's adverse credibility finding after a doctor declared that the claimant may have exaggerated her disability, and another doctor testified that test results displayed a very high "lie scale" score).

Fourth, Dr. Ripperda told Plaintiff that her condition would improve not with medications, but by staying active. R. at 321. This suggests that any sitting, standing, or walking limitations were not disabling. *See Myers*, 721 F.3d at 527.

Fifth, Plaintiff engaged in myriad daily activities that undermine her complaints. She reported, among other daily activities: shopping in stores with a scooter; attending church every week; operating a vacuum; dusting her home; and preparing simple meals. R. at 255. Cumulatively, these activities—which require sitting, standing, and walking for no more than thirty minutes at a time—undermine Plaintiff's claims that she has less RFC than that required for sedentary work. *See McDade v. Astrue*, 720 F.3d 994, 998 (8th Cir. 2013) (affirming an ALJ's finding that a claimant could perform sedentary work given his daily activities of cooking, taking care of his dogs, using a computer, driving with a neck brace, and shopping for groceries with the use of an electric cart).

Plaintiff essentially argues that the ALJ should have viewed this evidence in the light most favorable to her. That is not the standard. The ALJ properly considered, and rejected, Plaintiff's credibility. *See Milam*, 794 F.3d at 984.

## Conclusion

For the reasons above, the Commissioner's decision denying benefits is AFFIRMED.

**IT IS SO ORDERED.**

Date: June 6, 2016                                /s/ Greg Kays
                                                         GREG KAYS, CHIEF JUDGE
                                                         UNITED STATES DISTRICT COURT